MINTON, Respondent, vs. MINTON, Appellant.

*May 27—July 1, 1948.*

---

* The opinion in this case was prepared by the late Mr. Justice BARLOW.

For the appellant there was a brief by *Beck & DuRocher* of Racine, and oral argument by *Howard J. DuRocher*.

For the respondent there was a brief by *Thomas M. Kearney, Jr.,* attorney, and *J. M. Weisman* of counsel, both of Racine, and oral argument by *Mr. Kearney*.

HUGHES, J.   The sole question is whether the evidence sustains the findings of the trial court that the son was guilty of fraud in procuring the deed.

Since 1917 Albert Minton had owned the farm which was conveyed by deed to his son Frank.   From time to time he sold small portions of it and finally mortgaged that to which he held title to one John N. Thompson for $6,000.   Early in 1940 Thompson began to press for payment.   As inducement to liquidation of the debt he offered to accept $5,000 in full settlement of his mortgage.

Plaintiff attempted to refinance the loan with several agencies, including the Federal Land Bank, without success.   He then solicited his son Frank for help in continuing negotiations. They apparently made one trip to Waukesha, which was fruitless.   Then the defendant succeeded in arranging for a loan of $3,000 from the Lutheran Brotherhood.   When the parties gathered at the offices of Frank J. Schwartz Realty Company, agent for the Lutheran Brotherhood, difficulties were encountered because of accumulated taxes.

After further negotiations it was finally agreed that the Lutheran Brotherhood would take a first mortgage to secure $3,500 which it advanced, and that Mr. Thompson would take a second mortgage to secure the $2,000 balance due him after

allowing the $1,000 discount. He also advanced $390 to the plaintiff, for which he got an unsecured note executed by the plaintiff and indorsed by the defendant.

Three weeks later the defendant took the plaintiff to the office of Frank J. Schwartz Company and asked the agent to prepare the quitclaim deed. The defendant also obtained a bill of sale to the personal property, which he promptly sold for $930, out of which he paid about $360 on an obligation owed by the plaintiff.

It further appeared that when the defendant found the plaintiff without food and fuel he left either five or seven dollars. The rest of the proceeds from the sale of the personal property he deposited in his wife's account in the Union Grove Bank.

The defendant's contention was that when the plaintiff asked for his assistance in finding a new mortgagee he promised to deed the farm over to him. The plaintiff's position was that the deed was procured without his knowledge of the nature of the instrument at the time he signed it.

There was testimony that there had been ill feeling between the plaintiff and defendant and between the plaintiff and his other children, as well as between the children themselves, for years before this transaction.

After obtaining title the defendant, by giving a mortgage of $5,300 to the Federal Land Bank of St. Paul and by getting a further discount from Mr. Thompson, was able to reduce the amount of the indebtedness and clean up the mortgage to the Lutheran Brotherhood and Thompson.

The trial court found that the farm income of $500 per year indicated sufficient value to disclose a substantial equity over and above the obligations existing at the time of the execution of the deed. It found that the plaintiff received no consideration for the deed. It also found that the defendant is hard-headed and cold-blooded. If the father had promised to convey the farm to the son, the son would not have completed the refinancing and would not have assumed the liability of in-

dorser or any other form of personal liability unless and until he had first obtained the title.

The plaintiff was a man beyond seventy years of age and claimed to be hard of hearing. The defendant and his counsel .contended that the plaintiff is very astute and was feigning deafness. The trial court had an opportunity to see the plaintiff and was in a much better position to determine this issue than we are from the record. The evidence upon all of the issues in this case was in sharp conflict and presented questions of fact peculiarly within the province of the trial court.

There appears no error in the record nor lack of evidence to sustain the findings of the trial court.

*By the Court.*—Judgment affirmed.

MARTIN, J., took no part.